THOMPSON, Presiding Judge.
On March 29, 2011, Nancy McDuffie filed a complaint seeking workers’ compensation benefits from her employer, Medical Center Enterprise (“MCE”), for an injury she alleged she sustained on March 12, 2010, in the course of her employment. MCE filed an answer, but that answer is not contained in the record on appeal. MCE later moved for a summary judgment, arguing that McDuffie had failed to demonstrate that her injury arose out of and in the course of her employment. McDuffie opposed that summary-judgment motion.
On February 24, 2012, the trial court entered a summary judgment in favor of MCE. MCE filed a postjudgment motion in which it argued that the trial court’s February 24, 2012, summary judgment did not comply with the requirements of § 25-5-88, AJa.Code 1975. Thereafter, on March 15, 2012, the trial court entered an amended judgment detailing the undisputed facts and its legal conclusions based on those facts. McDuffie timely appealed.
The relevant facts are undisputed. The testimony from McDuffie’s deposition indicates that she has been employed as a patient-care attendant, or PCA, for MCE since November 2009. The record indicates that a PCA assists nurses in performing their job duties.
Also in 2009, McDuffie began attending Enterprise Community College to earn her registered-nurse (“RN”) degree. In January 2010, McDuffie was admitted into the nursing program at Wallace Community College (“Wallace”). As part of Wallace’s program, McDuffie was to attend classes and participate in “clinicals” in which she and other nursing students worked, under the supervision of a Wallace instructor, in the hospital from 7:00 a.m. until 12:00 p.m. The record does not indicate how frequently those clinicals were conducted. McDuf-fie explained that Wallace allowed its students to select from three area hospitals in which to perform their clinicals and that *859 she chose MCE because it was convenient for her to perform clinicals at the same place at which she was employed. It is undisputed that MCE had not provided benefits to pay for McDuffie’s schooling to become an RN and that the clinicals were not connected to McDuffie’s employment at MCE.
McDuffie testified that on March 12, 2010, she was to attend her fourth or fifth day of clinicals. McDuffie worked the night shift at MCE from 7:00 p.m. on March 11, 2010, until 7:00 a.m. on March 12, 2010. McDuffie testified that shortly before 7:00 a.m. on the morning of March 12, 2010, she changed from the “scrubs” she was required to wear for her job with MCE into the nursing “whites” that Wallace requires its nursing students to wear while performing clinicals in a hospital. According to McDuffie, after she changed into her whites, she clocked out at 7:01 a.m. and said goodbye to a supervisor. McDuffie acknowledged that, at that point, she had no further job duties to perform as a PCA for MCE.
McDuffie testified that, after she clocked out, she proceeded to the MCE lobby to meet her clinical supervisor and the other nursing students taking part in clinicals that day. McDuffie agreed that the supervisor and several other Wallace students were present in the MCE lobby and were waiting to start clinicals when she arrived. McDuffie stated that, as she reached the lobby, she realized that she had left a folder that contained materials she needed for clinicals in her vehicle. McDuffie testified that “I did speak to Dr. Kelley [ (the clinicals supervisor) ] and [told] her I forgot my folder in my car, and she told .me to go get it.”
In support of its summary-judgment motion, MCE also submitted the affidavit of Sabrina Kelley, the clinicals supervisor for Wallace. Kelley testified, among other things, that:
“When Ms. McDuffie reported to the lobby at [MCE] shortly after 7:00 a.m. on the morning of March 12, 2010, she immediately informed me that she had forgotten her notebook, which was in her car. I agreed to delay the start of clinicals for her to go to her car and retrieve the notebook....”
It is undisputed that, after McDuffie left the lobby to go to her vehicle, she fell on some stairs in the hallway leading to the parking lot where her vehicle was located. McDuffie is not certain what caused her fall, and she stated she might have tripped on a stair or on an anti-slip strip in the hallway. McDuffie broke her arm in that fall.
Before the trial court, McDuffie sought workers’ compensation benefits under the theory that she had fallen while leaving her employer’s place of business. MCE argued that McDuffie’s injury arose during the course of her college clinicals and was not connected to her employment. In reaching its March 15, 2012, judgment in favor of MCE, the trial court determined that McDuffie failed to demonstrate that the injury arose out of and in the course of her employment. In addition, the trial court concluded that McDuffie had failed to present evidence indicating that her fall was caused by a condition of her employment.
With regard to the standard for reviewing a summary judgment, this court has stated:
“ We review a summary judgment de novo, applying the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no *860 genuine issue as to any material fact and that the moving party is entitled to a judgment as a- matter of law.” Rule 56(c)(3), Ala. R. Civ. P. The court must view the evidence in a light most favorable to the nonmoving party and must resolve all reasonable doubts against the movant. Manners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992).’ ”
Barrett v. Lee Brass Co., 883 So.2d 227, 228 (Ala.Civ.App.2003) (quoting Bailey v. R.E. Garrison Trucking Co., 834 So.2d 122, 123 (Ala.Civ.App.2002)).
McDuffie argues that the trial court erred in entering a summary judgment in favor of MCE. Specifically, she contends that an injury that occurs on the employer’s premises as the employee is leaving work can be compensable under the Workers’ Compensation Act (“the Act”), § 25-5-1 et seq., Ala.Code 1975. An injury is compensable under the Act if the accident that caused the injury arose out of and in the course of employment. § 25-5-31, Ala.Code 1975. Our supreme court has held that “[a]n injury to an employee arises in the course of his employment when it occurs within the period of his employment, at a place where he may reasonably be and while he is reasonably fulfilling the duties of his employment or engaged in doing something incident to it.” Massey v. United States Steel Corp., 264 Ala. 227, 230, 86 So.2d 375, 378 (1955).
McDuffie maintains that the injury occurred on MCE’s premises as she was leaving work and, therefore, that her injury is compensable. In support of her argument, McDuffie cites Massey, supra, and Brunson v. Lucas, 5 So.3d 1274 (Ala.Civ.App.2008). In Massey, supra, the evidence indicated that, after he completed his work shift, Massey walked quickly across the employer’s premises to take a cold shower in a facility owned by the employer; Massey suffered an aneurysm as he was exiting the shower. The court determined that “[t]he use of the unheated water after a rapid walk on a warm day increased the employee’s blood pressure and caused the diseased or weakened blood vessel wall to break,” causing the aneurysm. Massey, 264 Ala. at 229, 86 So.2d at 377. The trial court found that the aneurysm was caused by Massey’s employment but that it did not arise out of the employment, and it entered a judgment in favor of the employer. Our supreme court agreed that the employment caused the accident, but it reversed that part of the trial court’s judgment denying workers’ compensation benefits. Our supreme court determined that Massey was entitled to benefits because the aneurysm arose out of his employment. The court explained that Massey was entitled to benefits because, when he was injured, he was “an employee, while in the act of leaving his employer’s premises, where his service has been performed, at an appropriate time after the completion of his actual service, [who was] engaged in an act naturally related and incidental to the service or work which he was engaged to perform.” Massey, 264 Ala. at 232, 86 So.2d at 380.
In Brunson, supra, the plaintiff worker was injured when, as he was crossing a street to the employer’s parking lot, he was struck by a co-employee’s vehicle. This court held that, because he had sought workers’ compensation benefits from his employer, the injured worker could not maintain an action against a co-employee absent an allegation of willful conduct on the part of the co-employee. In reaching its holding on that issue, this court noted that, “[i]n general, an employ *861 ee is not entitled to workers’ compensation benefits for an injury sustained while traveling to and from his or her place of employment; however, one exception to that rule permits an employee to recover compensation benefits if he or she is injured while in a parking lot owned and maintained by his or her employer.” Brunson v. Lucas, 5 So.3d at 1277.
Our supreme court has explained other exceptions allowing the recovery of workers’ compensation benefits when an employee is traveling to or from work:
“Generally, Alabama law has held that injuries sustained in accidents that occur while an employee is traveling to and from work are not covered under the Act because those injuries do not meet the ‘arising out of and in the course of employment’ requirement. See Hughes v. Decatur Gen. Hosp., 514 So.2d 935 (Ala.1987); Exchange Distrib. Co. v. Oslin, 229 Ala. 547, 158 So. 743 (1935); Tucker v. Die-Matic Tool Co., 652 So.2d 263 (Ala.Civ.App.1994); Walker v. White Agencies, Inc., 641 So.2d 795 (Ala.Civ.App.1993); Terry v. NTN-Bower Corp., 615 So.2d 629 (Ala.Civ.App.1992); Winn-Dixie Stores, Inc. v. Smallwood, 516 So.2d 716 (Ala.Civ.App.1987). Alabama courts have carved out only a few exceptions to this general rule:
“ ‘Such exceptions include situations where the employer furnishes the employee transportation or reimburses him for his travel expenses; where the accident occurs on the employer’s property or on public property that is tantamount to the employee’s ingress to and egress from the employer’s property; or where the employee is injured crossing a public street between the main premises of the employer and the parking lot owned by the employer.’
“Terry v. NTN-Bower Corp., 615 So.2d at 631 (citations omitted). See also Meeks v. Thompson Tractor Co., 686 So.2d 1213, 1216 (Ala.Civ.App.1996). An additional exception to the general rule arises when an employee, during his travel to and from work, is engaged in some duty for his employer that is in furtherance of the employer’s business. See Tucker v. Die-Matic Tool Co., 652 So.2d at 265.”
Ex parte Shelby Cnty. Health Care Auth., 850 So.2d 332, 336 (Ala.2002).
McDuffie also cites Ex parte Strickland, 553 So.2d 593 (Ala.1989), as further support for her argument that her injury should be compensable. In that case, Strickland, a construction worker, was required to be on call and available to move to a new workplace on short notice. After leaving one workplace, Strickland remembered he had left some tools he needed for work at that workplace. The evidence indicated that if Strickland were called to a different work site the next day, his employer would expect him to have those tools; however, Strickland, expected to work at the same workplace at which he left his tools the next day. Strickland climbed a fence to reenter the locked workplace to retrieve the tools, and he was injured. This court affirmed the trial court’s judgment denying benefits, concluding that Strickland had failed to demonstrate that his injury arose out of and in the course of his employment. Strickland v. Marshall Constr. & Repair, Inc., 553 So.2d 593 (Ala.1989). Our supreme court reversed, explaining:
“The proximate cause of Strickland’s injury was his desire to have his work-belt, as well as his personal effects, at hand should he be called to Florida [to work] on short notice. The fact that he intended to be [at the original workplace] the next day is not determinative of whether Strickland had a work-related objective when he was injured. In *862 stead, the inquiry is whether Strickland’s injury naturally related to his employment. We determine that Strickland’s injury was naturally related to his employment.”
Ex parte Strickland, 558 So.2d at 595.
This court has recently addressed an appeal in which an employee was injured while returning to work from the employee parking lot. In Ex parte Advantage Resourcing, Inc., 109 So.3d 170 (Ala.Civ.App.2012), this court held, in part, that an employee’s injury was compensable when he fell and was injured as he returned to work. In that case, the evidence indicated that the employee had gone to his vehicle in the employee parking lot to retrieve a radio necessary for his employment and that he fell on his way back to his workplace and was injured. This court concluded
“[tjhat the fall in this case stemmed from a PVC pipe that had been allowed to remain in close proximity to a walkway leading to a shop at which the employee and his coworkers were to report for work each day and that the employee’s fall occurred at a time and place at which he would reasonably be expected to have reported in furtherance of the employment relationship both support the trial court’s determination that the employee’s fall indeed arose out of and in the course of his employment.”
Ex parte Advantage Resourcing, Inc., 109 So.3d at 170.
McDuffie relies on the foregoing authorities to support her argument that her injury is compensable. In making that argument, McDuffie contends that she “was injured while exiting the hospital to go to her car at the end of the workday while taking her normal route.” MCE contends, however, that McDuffie was injured after she arrived to begin her clini-cals and, therefore, that her injury did not arise out of and in the course of her employment. MCE relies on the analysis in McMillan v. County of Mobile, 721 So.2d 230 (Ala.Civ.App.1998), in support of its argument that McDuffie’s injury did not arise out of and in the course of her employment. In that case, McMillan, a minor, sought to recover workers’ compensation benefits for the death of his father, Tricksey. The employer denied that the death arose out of or in the course of Tricksey’s employment. Tricksey was killed in an automobile accident while traveling to attend a college class. Although the employer paid for one-half of Trick-sey’s education, the employer had no control over the subject of the education, and it did not specify that the education had to be related to Tricksey’s job. The trial court denied McMillan’s claims for workers’ compensation benefits, and this court affirmed. In reaching that holding, this court explained:
“Pursuant to Alabama’s workers’ compensation law, compensation is available only for ‘injuries by an accident arising out of and in the course of the employment.’ Section 25-5-1(8), Ala. Code 1975, defines that phrase as follows:
“‘INJURIES BY AN ACCIDENT ARISING OUT OF AND IN THE COURSE OF THE EMPLOYMENT. Without otherwise affecting either the meaning or interpretation of the clause, the clause does not cover workers except while engaged in or about the premises where their services are being performed or where their service requires their presence as a part of service at the time of the accident and during the hours of service as workers.’
“This court set out the general test for determining whether an injury arises out of and in the course of employment, in Cummings Trucking Co. v. Dean, 628 So.2d 902, 904 (Ala.Civ.App.1993):
*863 “ ‘To determine whether an employee’s injuries arose out of his employment, it is only necessary to show that the employment was the cause and the source of the accident. Gold Kist, Inc. v. Jones, 537 So.2d 39 (Ala.Civ.App.1988); Massey v. United States Steel Corp., 264 Ala. 227, 86 So.2d 375 (1955).’
[[Image here]]
“ ‘Courts in other jurisdictions which have passed upon the compens-ability of injuries sustained outside the formal scope of the employee’s duties have evolved a number of criteria which may be resorted to in determining whether the employment and the recreation are related with sufficient closeness to be held within the terms of workmen’s compensation acts. For convenience, they were enumerated in Moore’s Case, 330 Mass. 1,110 N.E.2d 764, 766 [ (1953) ], as follows:
“ ‘ “(1) The customary nature of the activity.... (2) The employer’s encouragement or subsidization of the activity.... (3) The extent to which the employer managed or directed the recreational enterprise .... (4) The presence of substantial pressure or actual compulsion upon the employee to attend and participate.... (5) The fact that the employer expects or receives a benefit from the employees’ participation in the activity, whether by way of improved employer-employee relationships, ...; through greater efficiency in the performance of the employees’ duties, ...; by utilizing the recreation as partial compensation or additional reward for their work, or for advertising the employer’s business, or as an actual adjunct of his business.... Apart from the existence of employer compulsion, which often might warrant or even require a finding in favor of the employee, the presence or absence of any one of the other factors listed would not necessarily determine the issue. Nor, indeed, is the foregoing enumeration meant to be exclusive of other factors which might appear in a given case. What is required in each case is an evaluation of the significance of each factor found to be present in relation to the enterprise as a whole. Upon such an evaluation must the decision as to the closeness of the connection between the employment and the recreation ultimately rest.” (Citations omitted.)’
“Wooten v. Roden,] 260 Ala. [606,] 610-11, 71 So.2d [802,] 806 [ (1954) ].”
McMillan, 721 So.2d at 231-32. This court concluded that because there was no evidence indicating that the employer benefited from Tricksey’s furthering his education, that continuing his education was a requirement of Tricksey’s employment, or that the employer exercised any control over Tricksey’s education, the evidence did not support a conclusion that Tricksey’s death arose out of and in the course of his employment. Id.
McDuffie relies on the fact that her injury occurred on her employer’s premises after she finished work for the day. We agree that, in certain circumstances, such injuries may be compensable. Brunson v. Lucas, supra; Massey, supra. However, in order for an injury to be compensable in such a situation, the employee must have been “engaged in an act naturally related and incidental to the service or work which he was engaged to perform.” Massey, 264 Ala. at 232, 86 So.2d at 380; see also Ex parte Strickland, 553 So.2d at 595 (“the inquiry is whether [the employee’s] injury naturally related to his [or her] employment”). Relevant to a determination *864 whether the accident was incident to or related to McDuffie’s employment is the nature of the activity; whether MCE managed, directed, or encouraged the activity; or whether it would benefit MCE. McMillan v. County of Mobile, 721 So.2d at 233. McDuffie contends that the mere fact that the accident occurred on the way to the parking lot shortly after she finished her shift at MCE requires that the courts determine her injury to be compensable.
On the morning of March 12, 2010, McDuffie had clocked out from her shift working for MCE and had proceeded to the hospital lobby to report for the beginning of her clinicals for Wallace. It is undisputed that, similar to the facts in McMillan, supra, MCE did not contribute toward McDuffie’s education, did not direct the manner in which she obtained that education, and did not benefit by McDuf-fie’s participating in clinicals in order to further her education. McDuffie realized that she had forgotten materials necessary for the clinicals, and she obtained permission from her clinicals supervisor to retrieve those materials from her vehicle. Thus, MCE made a prima facie case that, at the time of her injury, McDuffie was pursuing her education and that the accident did not arise out of or in the course of her employment (or the completion of her employment).
McDuffie has not identified to this court any evidence indicating that her trip to her vehicle was related to her employment. McDuffie acknowledges that, had she not been injured, she would have retrieved the materials for her clinicals from her vehicle and returned to rejoin the clinicals; her work duties for MCE were complete for the day. Also, McDuffie agreed that the materials she was seeking to recover from her vehicle were related to her clinicals. Thus, unlike the employee in Strickland, supra, McDuffie’s injury cannot be said to be related to her attempt to retrieve work-related items. Unlike the employees in Brunson, supra, and Massey, supra, McDuffie was not attempting to leave the employer’s premises after completing her work when she was injured.
McDuffie argues that, had she been leaving on a “normal” day, i.e., one on which she did not have clinicals, her injury would likely be deemed to be compensable. However, March 12, 2010, was not a “normal” workday because McDuffie had clini-cals immediately following her work shift. Nothing in the record indicates that McDuffie would have traveled to her vehicle until after the completion of her clini-cals had she not left the clinicals materials in her vehicle. We note that McDuffie agreed before the trial court that if the accident had happened later in the morning, or after her clinicals were completed, the accident would not have been compen-sable.
McDuffie bases her argument that her injury is compensable on the short lapse of time between her leaving her work shift and her injury on MCE’s premises. However, that short period does not determine compensability. The fact that the distance between McDuffie’s workplace and the lobby in which she met with others to attend clinicals, and thus the time to travel that distance, was short does not defeat the fact that McDuffie had left work and had begun to engage in a different activity, i.e., college clinicals, at the time of her injury. McDuffie testified that she elected to perform her clinicals at MCE for her own convenience.
“[T]he inquiry is whether [McDuffie’s] injury naturally related to [her] employment.” Ex parte Strickland, 553 So.2d at 595. In this case, McDuffie had left her employment with MCE and had started her participation in her clinicals for the furtherance of her education. See McMillan, supra. The fact that her participation *865 was interrupted almost immediately by the need to retrieve materials relevant to the clinicals from her vehicle does not alter the conclusion that McDuffie’s leaving the MCE building to go to her vehicle had no relation to her employment. There is no indication that, if she had not needed to retrieve her materials for her clinicals, McDuffie would have left the MCE building to travel to her vehicle until after the completion of the clinicals. It is undisputed that the “proximate cause” of McDuf-fie’s injury was her desire to have her materials for her clinicals program, Ex parte Strickland, 55B So.2d at 595, and we conclude that the record contains no evidence indicating that MCE managed, directed, or encouraged McDuffie in performing her clinicals or other college coursework, or that it would benefit from McDuffie’s obtaining her RN degree. McMillan v. County of Mobile, 721 So.2d at 238. McDuffie has not demonstrated on appeal that she presented evidence to the trial court sufficient to create a genuine issue of material fact on the issue whether her accident was related to her employment so as to have arisen out of and in the course of that employment. Accordingly, we affirm the summary judgment in favor of MCE.
On appeal, McDuffie also argues that the trial court erred in determining that she could not recover because, she says, it determined that she “had no idea what caused her fall.” However, we have affirmed the trial court’s summary judgment by concluding that it correctly determined that McDuffie’s injury did not arise out of or in the course of her employment. Accordingly, because we have concluded that McDuffie’s injury is not compensable under the Act, we pretermit any discussion of whether she was required to have demonstrated with certainty what caused her to fall.
We affirm the trial court’s summary judgment in favor of MCE. ,
AFFIRMED.
PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.